```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF VIRGINIA
                    Richmond Division
```

RLI INSURANCE COMPANY,

    Plaintiff,

v.                                    Miscellaneous No. 3:06mc11

CONSECO, INC.,
et al.,

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Conseco's Motion To Compel John J. Rasmussen To Answer Certain Questions (Docket No. 8) filed by Conseco, Inc. ("Conseco") against RLI Insurance Company ("RLI"). For the reasons set forth below, the motion will be granted.

**BACKGROUND**

RLI insured Conseco and its officers and employees against costs resulting from shareholder lawsuits. Thereafter, Conseco's shareholders filed a securities class action suit (the "First Action") against it which resulted in a settlement. Conseco and RLI disagreed whether the insurance contract covered the First Action, but they settled that dispute by agreeing that RLI would pay the costs of the First Action in exchange for a release from other actions (the "Release Agreement").

At about the same time the First Action was pending, Conseco was a defendant in a related action (the "Russell Action"). RLI took the position that the Release Agreement released it from all

liability to provide indemnity to Coseco for the Russell Action. Nonetheless, RLI agreed to defend the Russell Action while reserving the right to seek reimbursement for all sums expended after the Russell Action was concluded.  Conseco settled the Russell Action for approximately $10 million, and incurred around $1 million in attorneys' fees.  Subsequently, Conseco submitted to RLI a claim for payment of the costs and fees from the Russell Action.

Anticipating that it would be in litigation with Conseco over the effect of the Release Agreement on RLI's liability for the Russell Action, RLI retained Morison-Knox Holden Melendez & Prough, LLP ("Morison-Knox") as the liaison between RLI and Conseco for all communications regarding the Russell Action.  John J. Rasmussen, of Morison-Knox, requested from Conseco, or Conseco sent to Rasmussen, various documents, including:

1.   An expert report (and background data) that Conseco had prepared analyzing Conseco's potential exposure should it lose the Russell Action on appeal (Conseco had prevailed at trial);

2.   A list of cases that Conseco claimed supported its view that the Russell Action trial verdict would be overturned on appeal;

3.   The invoices from litigating the Russell Action submitted by Conseco's defense counsel, Kirkland & Ellis LLP.

Thereafter, RLI refused to reimburse Conseco for the Russell Action expenses.  Conseco and RLI then engaged in the litigation in the Southern District of Indiana (the "Coverage Litigation") which

is pending trial in April 2007.  In the Coverage Litigation, RLI seeks a declaration that, for two reasons pertinent here, it is not liable to Conseco.  First, RLI claims that the Release Agreement completely released it from liability for the Russell Action, and it is not obliged to indemnify Conseco for expenses incurred in the Russell Action at all.[1]

Second, and alternatively (presuming that RLI *is* obliged to indemnify Conseco for the Russell Action), RLI claims it is not liable to Conseco to the extent that:

1. Kirkland & Ellis charged unreasonable fees;

2. Conseco's settlement with the Russell plaintiffs was unreasonable; and

3. Conseco failed to cooperate in the defense and investigation of the Russell claim.[2]

Conseco answers that the Release Agreement did not release RLI from liability for the Russell Action.  Conseco counterclaims that RLI breached its contract to insure Conseco, and that RLI acted in bad faith because it failed properly to investigate Conseco's claim submission in the Russell Action.[3]

---

[1] RLI's Third Amended Complaint, Dkt. No. [Unavailable] at 5-8.  S.D. Ind. Case No. 1:04-CV-310-LJM-WTL.

[2] RLI's Reply to Defendants' Amended Counterclaims, Dkt. No. [Unavailable] at 10.  S.D. Ind. Case No. 1:04-CV-310-LJM-WTL.

[3] Defendants' Answer to Plaintiff's Third Amended Complaint; Defendants' Amended Counterclaims for Declaratory Judgment, Breach of Contract and Bad Faith Tort, Dkt. No. [Unavailable] at 4, 10-14.  S.D. Ind. Case No. 1:04-CV-310-LJM-WTL.

As part of the discovery respecting these claims and counterclaims, Conseco deposed Rasmussen in Richmond, Virginia. During the deposition, Rasmussen refused to answer nine questions[4] on grounds of work product protection or attorney-client privilege.

In this action before this Court, Conseco moves to compel Rasmussen to answer the nine questions, arguing that neither work product protection nor attorney client privilege permit him to demur. RLI counters first that Conseco is barred from succeeding on this motion because it failed to meet and confer. Second, RLI argues that the motion should be denied because Conseco failed to

---

[4] Paraphrased, the questions (and the asserted grounds for not answering them) are as follows:

1. Did Rasmussen review Conseco's expert report and backup data discussing the probability of a reversal of the Russell decision on appeal? (work product).
2. Could Rasmussen have performed an independent analysis of the Russell claim and potential reversal? (work product).
3. Did Rasmussen review the cases (on which Conseco claimed to have based its Russell settlement decision) that Conseco provided to him at RLI's request? (work product).
4. Did Rasmussen review Kirkland & Ellis's defense invoices that Conseco sent him? (work product).
5. Did Rasmussen forward Kirkland & Ellis's defense fees on to RLI? (attorney-client).
6. Did RLI perform an independent investigation of Conseco's claim and settlement offer? (attorney-client).
7. Prior to February 2005, did Rasmussen in fact perform an independent analysis of the likelihood that Russell would be reversed on appeal? (work product).
8. Prior to February 8, 2005, did Rasmussen perform an independent analysis of the potential damages that Conseco was exposed to by the Russell Action? (work product).
9. Prior to February 8, 2005, did Rasmussen or RLI come to a conclusion as to whether RLI was obligated to cover Conseco for the Russell Action? (work product and attorney-client).

serve Rasmussen. Third, RLI argues that work-product protection and attorney-client privilege do indeed shield the answers to Conseco's questions from discovery.

For the reasons set out below, the Court rejects RLI's arguments, and grants Conseco's Motion to Compel.

## DISCUSSION

### A.   Meet-and-Confer

RLI's first contention is that Conseco's motion should not be considered because Conseco failed to meet and confer with RLI to resolve the privilege dispute, pursuant to Fed. Civ. P. 37(2)(A). This position lacks merit.

Conseco has submitted the affidavit of Glen G. Mastroberte, one of its attorneys in the Coverage Litigation. Mastroberte avers that he contacted RLI's lawyers about the dispute on November 21, 2006 and suggested that the matter be reviewed by a magistrate judge familiar with the case. On November 28, he offered RLI a compromise. RLI wrote a letter on November 30 stating that it did not think that Conseco had met its meet-and-confer obligations. Mastroberte replied that Conseco would wait until December 4 to file this motion so that RLI could consider the compromise offer. Also on December 4, RLI requested a list of the specific questions Conseco would be seeking to compel. Mastroberte sent a list of the questions the same day, and gave RLI until December 6 to consider the compromise offer. By December 6, RLI had not replied. Conseco

then filed this motion.

Rule 37(2)(A) requires that a movant in good faith confer or attempt to confer with the party not making the disclosure in an effort to secure the disclosure without court action. Mastroberte's averments are not controverted and the record shows that Conseco's actions qualify as a good-faith effort to attempt to resolve the discovery dispute out of court.

### B.  Failure To Serve Rasmussen

RLI also argued Conseco's motion should not be considered because Conseco had failed to serve Rasmussen, RLI's attorney who asserted the work product and attorney-client privileges on behalf of RLI. Conseco admitted this oversight (Dkt. No. 13) and sent copies to Rasmussen, who subsequently submitted a brief opposing Conseco's Motion to Compel (Dkt. No. 15). No party, or Rasmussen, appears to have been prejudiced by Conseco's failure to serve the motion on Rasmussen originally. The Court therefore rejects RLI's contention.

### C.  Work-Product Doctrine--Anticipation Of Litigation

Conseco argues that Rasmussen should be forced to answer the questions to which RLI claimed work-product protection because the questions were not directed at work that Rasmussen would have done

in anticipation of litigation.[5] Under the circumstances presented by this record, this argument is correct.

### 1. "Because Of" Litigation

Hickman v. Taylor, 329 U.S. 495 (1947)[6] and its progeny establish the principal that the material which reflects an attorney's efforts to investigate and prepare a case are protected from discovery if such material was created in "anticipation of litigation." Id. at 508-10; United States v. Nobles, 422 U.S. 225, 237-38 (1975). However, otherwise identical work by an attorney is not protected by the work-product doctrine if it was created in the "ordinary course of business." See Sandberg v. Va. Bankshares, Inc., 979 F.2d 332, 355 (4th Cir. 1992).[7]

---

[5] Conseco also argues that the questions are not protected because they go to underlying facts rather than any work product that might exist. It is not necessary to reach that question because the "work" about which Rasmussen was questioned was not done "in anticipation of litigation," and therefore is not protected.

[6] Fed. R. Civ. P. 23(b)(3), which partially codified Hickman, controls discovery of documents. Hickman still controls discovery of testimony, so Hickman controls here. See, e.g., Wynard v. Whirlpool Corp., 160 F.R.D. 85, 87 (S.D.W. Va. 1995). For the purposes of this case, the difference does not matter. See generally 8 Wright & Miller § 2023.

[7] At the unopposed request of one of the parties, the Fourth Circuit vacated the Sandberg decision. See Sandberg v. Virginia Bankshares, Inc., 1993 WL 524680 (4th Cir. April 7, 1993). Vacated opinions may be cited for precedential effect when they have been validated by the Court of Appeals. See Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll., 848 F.2d 457, 459 (4th Cir. 1988). The Fourth Circuit has cited Sandberg numerous times, see, e.g., United States v. Mitchell, 45 F.3d 428, 428 (4th Cir. 1994); Canada Life Assur. Co. v. Estate of Lebowitz, 185 F.3d 231, 239 (4th Cir.

To help distinguish between "anticipation of litigation" and "ordinary course of business," several courts of appeals,[8] including the Fourth Circuit, have held that an attorney's work is protected when it was created "because of" the prospect of litigation. National Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc., 967 F.2d 980 (4th Cir. 1992). The "because of" standard is designed to help district courts determine the "driving force" behind the preparation of the work product. Id. at 984.

National Union's "because of" standard operates on two related principles. First, it protects "work product" that is created because of litigation when that litigation is a real likelihood, but not "work product" that is created "because of" litigation when that litigation is merely a possibility. National Union explained that, "because litigation is an ever-present possibility in American life, it is more often the case than not that events are documented with the general possibility of litigation in mind. Yet the mere fact that litigation does eventually ensue does not, by

---

1999), and the Court treats it as authority for this decision.

[8] See In re Grand Jury Proceedings, 604 F.2d 798 (3d Cir. 1979); Binks Mfg. Co. v. Nat'l Presto Indus., Inc., 709 F.2d 1109 (7th Cir. 1983); United States v. Adlman, 134 F.3d 1194 (2d Cir 1998); In re Grand Jury Subpoena, 357 F.3d 900 (9th Cir. 2003); United States v. Roxworthy, 457 F.3d 590 (6th Cir. 2006). These cases explicitly follow Wright, Miller & Marcus's formulation, which asks "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared . . . because of the prospect of litigation." Wright, Miller & Marcus, Federal Practice and Procedure Civil 2d § 2024 at 343 (emphasis added).

itself, cloak materials with work product immunity." National Union, 967 F.2d at 984. Therefore, to receive protection, the "work product" must be prepared "because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." Id. The preparation of work merely because an attorney "anticipates the contingency" of litigation is not sufficient to qualify the work for the protection afforded by the work-product doctrine. Id. (internal quotations omitted).

Second, the "because of" standard is designed to protect only work that was conducted because of litigation, not work that would have been done in any event. National Union noted that "materials prepared . . . pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation . . . ." 967 F.2d at 984. National Union drew this rule from Goosman v. A. Duie Pyle, Inc., 320 F.2d 45 (4th Cir. 1963). In Goosman, the plaintiff sustained injuries when he collided with the defendant's tractor-trailer. Federal regulations required the defendant's agent to make a written statement of the incident. Though litigation was evidently imminent, the Goosman court ruled that the report was not "work product." Id. at 52. National Union construed Goosman to mean that where regulations or other "non-litigation" responsibilities compel a party to produce "work product," that product is made "in the ordinary course of

9

business, and does not receive work product immunity." <u>National Union</u>, 967 F.2d at 984. <u>See also</u> <u>Collins v. Mullins</u>, 170 F.R.D. 132, 135 (W.D. Va. 1996)(relying on <u>National Union</u> to hold that, in a case where police produced an incident report of a police altercation that was likely to result in litigation, the report was not entitled to work product immunity because the police department was under an "affirmative duty" to produce the report).

Several other courts of appeals have been confronted more directly with "work product" that was created while litigation was imminent but that was arguably made for another purpose. These courts have formulated rules that expressed more explicitly the principle suggested by <u>National Union</u> and <u>Goosman</u>. In <u>United States v. Adlman</u>, 134 F.3d 1194 (2d Cir. 1998), Judge Laval, looking in part to <u>National Union</u>, wrote that "the 'because of' formulation . . . withholds protection from documents . . . that would have been created in essentially similar form <u>irrespective of</u> the litigation." <u>Id.</u> at 1202 (emphasis added). The approach reflected in <u>Adlman</u> was explained with the observation that "[w]here a document was created because of anticipated litigation, and would not have been prepared in substantially similar form <u>but for</u> the prospect of that litigation," it is protected work

product.9  Id. at 1195 (emphasis added).  Other courts of appeals have established similar rules.10

Adlman's "but for" and "irrespective of" formulations are useful expositions of National Union's "because of" standard, and they provide guidance for applying National Union to the facts in this case.  In light of National Union and Adlman, the "work product" that RLI seeks to protect must have been created because of the prospect of litigation, when (1) "the [party] faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation," National Union, 967 F.2d at 984, and (2) the work product "would not have been prepared in substantially similar form but for the prospect of that litigation."  Adlman, 134 F.3d at 1195.

### 2. Burden of Proof

Courts disfavor assertions of evidentiary privilege because they shield evidence from the truth-seeking process.  Herbert v. Lando, 441 U.S. 153, 175 (1979); In re Grand Jury Proceedings, 727

---

9 Several district courts in the Fourth Circuit, looking to National Union, have applied a principle similar to Adlman's. See, e.g., In re Royal Ahold N.V. Sec. & ERISA Litig., 230 F.R.D. 433, 436 (D. Md. 2005)(relying on National Union to hold that "[u]ndoubtedly the company was also preparing for litigation, as the first class action was filed [close in time], but the investigation would have been undertaken even without the prospect of preparing a defense to a civil suit.").

10 See In re Grand Jury Subpoena, 357 F.3d 900 (9th Cir. 2003)(quoting Adlman's "but for" language); United States v. Roxworthy, 457 F.3d 590, 593-94 (6th Cir. 2006)(quoting Adlman's "irrespective of the litigation" language).

11

F.2d 1352, 1355 (4th Cir. 1984). This approach has three implications for claims of evidentiary privilege.

First, the party asserting work-product protection bears the burden to show that the "work product" was prepared in anticipation of litigation. Sandberg, 979 F.2d at 355. Second, in order to meet this burden, the proponent of the privilege must "come forward with a specific demonstration of facts supporting the requested protection," preferably though affidavits from knowledgeable persons. Suggs v. Whitaker, 152 F.R.D. 501, 505 (M.D.N.C. 1993). See also North Carolina Elec. Membership Corp. v. Carolina Power & Light Co., 110 F.R.D. 511, 515 (M.D.N.C. 1986)(noting that courts require the applicability of the privilege by a showing that "precise facts exist to support the claim of privilege."). Finally, assertions of evidentiary privilege are narrowly and strictly construed, Trammel v. United States, 445 U.S. 40, 50-51 (1979), so that the privilege is "strictly confined within the narrowest possible limits consistent with the logic of its principle." In re Grand Jury Proceedings, 727 F.2d at 1355 (quotations omitted).

These authorities create an exacting standard for a litigant who seeks to shield relevant facts with an evidentiary privilege, and the Fourth Circuit's application of these principles is instructive. In Sandberg, Bankshares, a bank holding company, claimed that its general counsel's notes and recollections from a

12

corporate meeting were work product. The general counsel submitted an affidavit stating that the purpose of the meeting was to discuss litigation over a merger, as well as the merger itself. Id. at 349. After noting that work-product claims are construed narrowly, the Fourth Circuit held that Bankshares had not satisfied its burden to demonstrate the privilege:

> "Although the general counsel's affidavit indicates the purposes of the . . . meeting, it does not indicate her purpose in making the notes. [Because a general counsel may take notes for purposes besides litigation,] her purpose in taking the notes is not self-evident and we find that Bankshares has failed to satisfy its burden of proof on this issue."

979 F.2d at 356. Sandberg illustrates that the work-product protection is applied narrowly, and must be supported by specific evidence to satisfy the proponent's evidentiary burden.

### 3. Application

Applying National Union's "because of" formulation and the burden of proof to this case, RLI has the burden to demonstrate, by establishing specific facts, that the questions Rasmussen refused to answer relate to work that he did because: (1) RLI faced imminent litigation on that claim; and (2) that Rasmussen would not have done that work in substantially similar form but for the prospect of that litigation. The Court, in turn, should construe RLI's factual assertions within the narrowest possible limits consistent with the logic of the "because of" principle. Under

these criteria, RLI has failed to meet its burden to demonstrate that the work Rasmussen was questioned about was done <u>vel non</u> "because of" the prospect of litigation.

RLI states convincingly that it believed litigation over the Russell Action was imminent, and that it hired Rasmussen because of that litigation. However, even under a generous reading, RLI's statements show that it anticipated litigation <u>only</u> over whether the Release Agreement released it from liability for the Russell Action. RLI proffers <u>no</u> evidence showing that it anticipated litigation over whether Conseco's settlement and attorney's fees from the Russell Action were reasonable.

All of the questions that Rasmussen refused to answer had to do with what sort of investigation he and RLI conducted into the reasonableness of Conseco's settlement and attorney's fees in the Russell Action. Because RLI's assertions demonstrate only that it was anticipating litigation over the Release Agreement, RLI has the burden to demonstrate that it conducted any "reasonableness" investigation <u>because of</u> the litigation it anticipated over the Release Agreement. Under the requirements set forth in <u>National Union</u> and <u>Adlman</u>, RLI has failed to do this.

First, neither RLI's pleadings, its Third Amended Complaint, nor its Reply to Conseco's Counterclaims suggest in any way that the reasonableness the Russell settlement or attorneys' fees had any bearing on the question of whether the Release Agreement

14

released RLI from liability in the Russell Action. RLI therefore failed to carry its burden to show, in National Union's basic "because of" sense, that Rasmussen's review of the reasonableness question was undertaken "because of" the litigation that RLI anticipated to be imminent--litigation over the Release Agreement.

Second, RLI failed to meet the "but for" burden suggested in National Union and set forth in Adlman, because it failed to show how Rasmussen's "reasonableness" review was any different than it would have been had RLI been conducting a conventional investigation of Conseco's claim. Again, RLI demonstrated that it anticipated litigation; that it hired Rasmussen for that reason; and that Rasmussen did work to prepare for litigation. However, RLI did agree to act, conditionally, as Conseco's insurer for the Russell Action. As Conseco points out in its Counterclaim, an insurer is obliged by Indiana law to "promptly and thoroughly investigate all claims." Conseco's Answer and Counterclaim at 13. RLI, therefore, bears the burden to show how it would have undertaken this obligation differently were no litigation over the Release Agreement in sight. RLI has not done so. While RLI did hire outside counsel to interface with Conseco, hiring outside counsel does not excuse RLI from its duty to investigate insurance claims. RLI submitted no specific evidence that it would have conducted the "reasonableness" investigation differently had no litigation been anticipated. RLI therefore fails the "but for"

formulation of National Union's requirement that work product be created "because of" litigation in order to receive work-product protection.

Put simply, RLI needed to demonstrate that any investigation it or Rasmussen conducted into the reasonableness of the Russell expenses was conducted because of the litigation that RLI anticipated--litigation over the effect of the Release Agreement. Even according RLI the benefit of all permissible inferences, RLI has not satisfied its burden to show that Rasmussen did the work about which he was questioned in anticipation of litigation, and its work-product based opposition to Conseco's Motion to Compel will therefore be denied.

### D. Attorney-Client Privilege

RLI claims that Rasmussen is not obliged to answer three of Conseco's questions (questions 5, 6, and 9)[11] because they are protected by the attorney-client privilege. RLI's argument fails because it has not met its burden to prove the privilege that it claims.

Both parties agree that in general, while attorney-client communications are protected, the facts underlying those

---

[11] (5) Did Rasmussen forward Kirkland & Ellis's defense fees on to RLI? (6) Did RLI perform an independent investigation of Conseco's claim and settlement offer? (9) Before February 2005, did Rasmussen or RLI come to a conclusion as to whether RLI was obligated to cover Conseco for the Russell Action?

communications are not. However, RLI submits that, in cases where disclosing underlying facts would necessarily disclose confidential communications, those facts can come within the privilege. From this proposition, RLI goes on to argue that "the only way Mr. Rasmussen could possibly know [whether RLI had performed an independent investigation of Conseco's settlement offer] would be if [RLI] told him, in a confidential communication." RLI concludes that forcing Rasmussen to testify about any investigation RLI performed would therefore breach attorney-client privilege.

The proponent of the attorney-client privilege has the burden to demonstrate its applicability. United States v. Lentz, 419 F. Supp.2d 820, 827 (E.D. Va. 2005). Specifically, the proponent must establish "not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived." In re Grand Jury Subpoena, 341 F.3d 331, 335 (4th Cir. 2003). The privilege applies only if "the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily [legal services] . . . ." United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982)(citing United States v. United Shoe Mach. Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950))(emphases added).

Furthermore, as with assertions of work-product protection, the privilege is strictly construed, United States v. (Under Seal),

17

748 F.2d 871, 875 (4th Cir. 1984). As a result, "[i]t is incumbent upon the proponent to specifically and factually support his claim of privilege, usually by affidavit. . . an improperly asserted privilege is the equivalent of no privilege at all." Byrnes, 111 F.R.D. at 71. A conclusory allegation that a communication is protected by attorney-client privilege is inadequate to meet this burden. See General Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1212 (8th Cir. 1973); North River Ins. Co. v. Stefanou, 831 F.2d 484, 487 (4th Cir. 1987). As the Fourth Circuit explained in (Under Seal), "in practical terms, this burden requires the proponent to explain, through ex parte submissions, if necessary to maintain confidentiality, the significance or meaning of an otherwise cryptic document." 748 F.2d at 876.

Bearing these principles in mind, RLI would have to show specifically that, in each of the disputed "communications," (1) RLI communicated the underlying fact to Rasmussen, (2) without the presence of strangers, (3) for the purpose of seeking legal services. See Jones, 696 F.2d at 1072. RLI did not make these showings.

Instead, RLI made the conclusory assertion that "the only way Mr. Rasmussen could possibly know [the answer to each question] would be if his client told him" in a privileged communication. This assertion is unsupported by any proof. A conclusory

18

allegation that the documents sought are protected by attorney-client privilege is inadequate to meet this burden.

RLI needed to demonstrate specific facts showing that the communications were privileged. Because RLI instead submitted only a conclusory statement that the "communications" must have been privileged, it failed to meet its burden of proof. Therefore, Conseco's motion to compel the answers that RLI seeks to shield with attorney-client privilege will be granted.

## CONCLUSION

For the reasons set forth above, Defendant Conseco's Motion To Compel John J. Rasmussen To Answer Certain Questions is granted and Rasmussen shall answer all nine questions at issue in this matter.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

/s/
Robert E. Payne
United States District Judge

Richmond, Virginia
Date: March 7, 2007